**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.M.-1 and Z.H.**

**No. 21-0132** (Mingo County 19-JA-91 and 19-JA-92)

**MEMORANDUM DECISION**

Petitioner Mother J.M.-2, by counsel Susan J. Van Zant, appeals the Circuit Court of Mingo County's February 8, 2021, order terminating her parental rights to J.M.-1 and Z.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Diana Carter Wiedel, filed a response on behalf of the children also in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in terminating her parental rights and denying her post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against petitioner in November of 2019. The DHHR alleged that law enforcement officers were dispatched after it was reported that there was a child present in the home of a woman named J.F. and that J.F. did not know the child or the child's mother.[2] A Child Protective Services ("CPS") worker reported to J.F.'s home, and J.F. reported that someone dropped the child off to her weeks prior but that no one had returned to retrieve the child. J.F. stated that she did not know the child's name, only her nickname, and that she did not know the child's mother's name. However, J.F. was able to reach the child's mother, petitioner J.M.-2, via phone and indicated to the CPS worker that petitioner would be reporting to

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as J.M.-1 and J.M.-2, respectively, throughout this memorandum decision.

[2]It is unclear how J.F. was acquainted with petitioner's family.

the local police station to retrieve the child. According to the petition, J.F.'s home was infested with roaches, including inside of the refrigerator. J.F. had no food in the home, and the child was filthy and in a dirty diaper that had not been changed for days.

The DHHR further alleged that when petitioner arrived at the police station to claim the child, Z.H., she asserted that J.F. took the child from the maternal grandmother, with whom petitioner and her children lived, and never returned her. However, petitioner was unable to explain why she did not retrieve the child from J.F. The DHHR alleged that upon removing petitioner's other child, J.M.-1, from petitioner's home, CPS workers observed that home was in deplorable condition, as well. The CPS workers observed roaches throughout the home and noted that the home had a noticeable unpleasant odor. As a result of these observations, petitioner and J.F. were charged with child neglect creating risk of injury. Petitioner was incarcerated pending trial.

The adjudicatory hearing was continued several times, and the DHHR eventually filed an amended petition in June of 2020. The DHHR alleged that Z.H., then three years old, made allegations of sexual abuse.[3] According to the DHHR, Z.H. disclosed to her pediatrician that she had been touched in her "private area" by multiple men, that they used their mouths, and that it hurt. J.M.-1, then five years old, corroborated Z.H.'s disclosures and stated that he watched the sexual abuse. Both children indicated that this abuse occurred while they lived with petitioner. The DHHR further alleged that Z.H. underwent a Child Advocacy Center interview, and consistently disclosed that her genitals had been touched beneath her clothes. Lastly, the DHHR noted that petitioner had been released from incarceration on furlough to attend a drug treatment program. Petitioner subsequently filed a response denying the allegations in both the initial and amended petitions.

In July of 2020, petitioner submitted to a forensic psychological evaluation. During the interview, petitioner largely minimized her responsibility for leaving Z.H. in J.F.'s home, allowing the children to live in deplorable home conditions, and allowing sexual abuse to occur. Rather, petitioner focused on her perception of having been mistreated by law enforcement. Petitioner claimed she did not know why CPS was concerned about Z.H. having been left in J.F.'s home and disputed the child's disclosures of sexual abuse while in petitioner's care. Petitioner also minimized her history of drug abuse. The evaluator opined that petitioner's prognosis for attaining minimally adequate parenting was highly guarded due to her failure to acknowledge responsibility for her actions and her minimization of her substance abuse issues.

The circuit court held an adjudicatory hearing in September of 2020. The circuit court took judicial notice of testimony previously provided at the preliminary hearing and heard testimony from the CPS worker and the children's therapist. The CPS worker testified that the children made clear, consistent disclosures of sexual abuse that occurred in petitioner's home. The CPS worker testified that petitioner was "very defiant" and denied that any abuse occurred. Further, petitioner refused to disclose her whereabouts during the time Z.H. was left at J.F.'s home. The children's therapist testified that Z.H. disclosed sexual abuse during play therapy, both verbally and by demonstrating on a doll. The therapist opined that Z.H. also exhibited behaviors indicative of

---

[3]Although not clear from the record, it appears that J.M.-1 also eventually disclosed that he was sexually abused.

2

sexual abuse, such as defecating in unusual places including an air vent. The therapist further testified that the children lacked the ability to "allow adults to establish safe boundaries," which suggested that the adults responsible for their care in their developing years were "really not attuned to tending to these children and they've, more or less, had to fend for themselves." As such, the therapist believed the children had been extremely neglected. At the conclusion of evidence, the circuit court found that petitioner abused and neglected the children and adjudicated her as an abusing parent.

The guardian filed a report in October of 2020, recommending that petitioner's parental rights be terminated. The guardian reported that petitioner remained incarcerated until May of 2020, when she was released on furlough in order to participate in drug treatment. The guardian stated that, in July of 2020, petitioner underwent a psychological evaluation and denied having abused and neglected the children and denied any knowledge of sexual abuse. The guardian further stated that the children's therapist opined that the children exhibited sexually reactive behavior, that they needed to be placed in a home where they could be constantly monitored, and that there were concerns that petitioner would be unable to provide an appropriate environment or the type of monitoring they needed.

Also in October of 2020, the circuit court held an initial dispositional hearing. The children's therapist testified regarding the children's ongoing behavioral issues, including sexually acting out, cruelty to animals, aggression, and regression in toilet training. The therapist opined that their behaviors were the result of sexual trauma coupled with neglect and that it was likely that the trauma was intense trauma and occurred more than once. Following the therapist's testimony, the circuit court continued the dispositional hearing. At the continued hearing held in November of 2020, a CPS worker testified that the DHHR recommended the termination of petitioner's parental rights. The CPS worker testified that she worked closely with the children's therapist and that the therapist opined that termination of petitioner's parental rights was in the children's best interest. The CPS worker further remarked that petitioner's psychological evaluation indicated that the children were at risk for further abuse if returned to petitioner's care.

Petitioner's therapist testified that petitioner cooperated during their sessions and had made significant progress in her therapy. The therapist testified that petitioner took responsibility for her actions and would be successful in parenting her children if they were returned to her care. An employee at petitioner's drug treatment program testified that petitioner had been very compliant with treatment and was pleasant, encouraging, and a hard worker. The witness testified that petitioner had taken responsibility for the neglect of her children and had pled guilty to child neglect creating risk of injury in her criminal case.

Petitioner testified that she accepted responsibility for her actions and pled guilty to the related criminal charge against her. She further testified that she did not observe the sexual abuse perpetrated against the children but acknowledged that it happened while she was abusing drugs and not actively present in the children's lives. However, petitioner denied knowing why the children's therapist would say the children's disclosures indicated chronic and intense abuse. Petitioner testified regarding her progress in her recovery program and opined that she now had the tools to protect her children. Petitioner requested an improvement period and visitation with the children.

3

At the close of evidence, the circuit court commended petitioner for her progress in her treatment program. However, the circuit court found that the children "were not only horribly abused but in very terrible ways for long periods of time for their tender ages." The circuit court found that petitioner's testimony that she did not know of the children's abuse and neglect was not credible. It further found that the children's behaviors should have alerted anyone that something was happening to them and that they were being "horribly abused." The circuit court stated, "I believe she knew." Accordingly, the circuit court denied petitioner's motion for an improvement period and terminated her parental rights upon finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals the February 8, 2021, dispositional order.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period. According to petitioner, the DHHR failed to demonstrate that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future. Petitioner contends that there was no evidence presented that she abused or neglected the children or that she was unable to correct any deficiencies in her parenting. Petitioner argues that the evidence demonstrated that the children were abused by other people— not by her. Petitioner further asserts that she presented sufficient evidence to warrant granting her an improvement period, including her own testimony, and that of her therapist and a recovery program employee. This testimony demonstrated that petitioner had been abused as a child, that she made substantial progress in her recovery program, that she accepted responsibility for her actions, and that she shared a strong bond with the children. As such, petitioner contends that the circuit court erred in denying her an improvement period or visitation with the children.

---

[4]Z.H.'s father's parental rights were terminated below, and the permanency plan for the child is adoption by her foster family. J.M.-1's father was granted an improvement period and is currently participating in the proceedings. Should reunification with the father not occur, the child's concurrent permanency plan is adoption.

Although she does not list her adjudication as an assignment of error, petitioner briefly argues that the circuit court failed to present evidence that she abused her children. This Court has previously noted that

> [a]t the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Further, West Virginia Code § 49-1-201 defines "abused child" as a child whose health or welfare is being harmed or threatened by sexual abuse or sexual exploitation and defines "neglected child" as one "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education."

Here, Z.H. disclosed to multiple people that she was sexually abused while living in petitioner's home. The child described that several men touched her vagina with their mouths and that it hurt. Z.H. was able to verbally describe this conduct, as well as demonstrate it on a doll during play therapy. J.M.-1 corroborated Z.H.'s disclosures and stated that he witnessed Z.H. being sexually abused. Further, according to the children's therapists, both children exhibited behaviors associated with sexual trauma. The record also demonstrates that Z.H. had been left in another person's home for several days, without the necessary care, and petitioner had done nothing to locate the child. Additionally, the children lived in a deplorable home that was roach infested, and Z.H. was left in J.F.'s home in similar conditions. Based on this evidence, we find no error in the circuit court's adjudication of petitioner as an abusing or neglecting parent.

We further find no error in the circuit court's denial of petitioner's motion for an improvement period. West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (quoting *In re Emily*, 208 W. Va. 325, 334, 540 S.E.2d 542, 551 (2000)). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

5

We find that petitioner failed to demonstrate that she was likely to fully participate in an improvement period. Throughout the entirety of the proceedings, and, indeed, even on appeal, petitioner denies having abused and neglected the children and minimizes the severity of their abuse and neglect. While petitioner testified at the dispositional hearing that she does not contest that the children were abused, petitioner asserts that she did not know the identities of the perpetrators of the abuse. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Although petitioner participated in a recovery program and seemed to make progress in that regard, her failure to accept responsibility for her actions in light of the overwhelming evidence against her results in making the problem untreatable and in making an improvement period an exercise in futility at the children's expense. As noted above, a circuit court may deny a parent an improvement period when no improvement is likely. *Tonjia M.*, 212 W. Va. at 448, 573 S.E.2d at 359. Accordingly, we find no error in the circuit court's decision to deny petitioner a post-adjudicatory improvement period.

The evidence as set forth above likewise supports the termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

Here, the record demonstrates that the children were sexually abused and neglected by petitioner. The circuit court described the children as "horribly abused" and found that they had been abused in "terrible ways for long periods of time." However, petitioner denied having abused the children or having knowledge of the abuse throughout the proceedings below. While petitioner testified at the dispositional hearing that she took some responsibility for her actions, she continued to state that she did not know of the abuse and did not know why the children's therapist would describe their abuse as chronic or intense. The circuit court found that petitioner's testimony in this regard was not credible. The circuit court further found that the children's behaviors should have alerted petitioner that something was happening to them and that they were being abused. The circuit court explicitly stated, "I believe [petitioner] knew." While petitioner contests the circuit court's findings, we note that the circuit court was free to weigh this evidence and find that petitioner's self-serving testimony lacked credibility. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). As such, we decline to

disturb any such credibility determinations on appeal. Moreover, to the extent that petitioner claims she should have been granted an improvement period prior to the termination of her parental rights, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given petitioner's failure to adequately accept responsibility for the abuse and neglect of the children, we find no error in the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Petitioner is entitled to no relief in this regard.

To the extent petitioner argues that the circuit court erred in denying her post-termination visitation, we find no error. In regard to post-termination visitation, we have previously held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002).

Petitioner fails to cite to any evidence in the record demonstrating that post-termination visitation is in the children's best interest. To the contrary, the record reveals that the children were engaging in sexually reactive behavior indicative of intense trauma while in petitioner's care. The children's therapist opined that the children needed stable placements equipped to handle their behaviors. Petitioner failed to demonstrate how further contact with her would be in the children's best interest, and would not interrupt the progress they are making in therapy. Accordingly, we find no error.

Lastly, because the proceedings regarding one of the fathers remain ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference,

requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 8, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: October 13, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton